**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARLOS G. ROCHA, | ) |
| | ) |
| Plaintiff | ) |
| | ) CASE NO.: 1:14-cv-04857 |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| J. GORDON RUDD JR., ANNE T. REGAN, PATRICIA A. | ) |
| BLOODGOOD, ZIMMERMAN REED PLLP, GREGORY J. | ) |
| MYERS, SUSAN ELLINGSTAD, and LOCKRIDGE | ) |
| | ) |
| Defendants | ) |

**COMPLAINT**

Plaintiff Carlos G. Rocha ("Rocha" or "Plaintiff"), by and through his attorney, Lisa Johnson of Anchor Law Offices, PLLC, states as follows for his complaint against J. Gordon Rudd, Jr. ("Rudd"), Anne T. Regan ("Regan"), Patricia A. Bloodgood ("Bloodgood"), Zimmerman Reed, PLLP ("Zimmerman"), Gregory J. Myers ("Myers"), Susan Ellingstad ("Ellingstad"), and Lockridge Grindal Nauen PLLP ("Lockridge"):

**JURISDICTION AND VENUE**

1.      Jurisdiction over the claims asserted herein by Plaintiff is invoked with this Court pursuant to 28 U.S.C. § 1332 based upon complete diversity of the parties.

2.      Venue is proper in this Court because much of the illegal conduct alleged herein occurred within this district and throughout the State of Illinois.

**PARTIES**

3.      Plaintiff Rocha is an individual residing in West Palm Beach, Florida.

1

4.      Defendant Rudd is an attorney residing and practicing law in the state of Minnesota. Rudd is a partner at Zimmerman and represented Rocha and other plaintiffs in the failed *Fluegel* class action.

5.      Defendant Regan is an attorney residing and practicing law in the state of Minnesota.  Regan is a partner at Zimmerman and represented Rocha and other plaintiffs in the failed *Fluegel* class action.

6.      Defendant Bloodgood is an attorney residing and practicing law in the state of Minnesota.  Regan is a partner at Zimmerman and represented Rocha and other plaintiffs in the failed *Fluegel* class action.

7.      Defendant Zimmerman is a law firm doing business in Minneapolis, MN. Zimmerman represented Rocha and other plaintiffs in the failed *Fluegel* class action and has its principal place of business at 80 S. 8th Street, 1100 IDS Center, Minneapolis, MN 55402.

8.      Defendant Myers is an attorney residing and practicing law in the state of Minnesota.  Myers is a partner at Lockridge and represented Rocha and other plaintiffs in the failed *Fluegel* action.

9.      Defendant Ellingstad is an attorney residing and practicing law in the state of Minnesota.  Ellingstad is a partner at Lockridge and represented Rocha and other plaintiffs in the failed *Fluegel* action.

10.      Defendant Lockridge is a law firm doing business in Minneapolis, MN. Lockridge represented Rocha and other plaintiffs in the failed *Fluegel* action and has its principal place of business at 100 Washington Ave, Suite 2200, Minneapolis, MN 55401.

## FACTUAL BACKGROUND

11.     On or about April 20, 2005, a class action complaint was filed by a handful of former FedEx contractors alleging employee misclassification under the Illinois Wage Act and other fraudulent conduct against FedEx Ground Package Systems, Inc. ("FedEx Ground"), FedEx Home Delivery ("FHD"), and FedEx Corporation ("FedEx Corp."). *See Fluegel v. FedEx Ground Package System, Inc*., N.D. Ill., Case No. 1:05-cv-02326 (hereafter referred to as "Fluegel").

12.     The foregoing FedEx contractors joined as plaintiffs in Fluegel were represented by the defendant attorneys of Zimmerman and Lockridge (referred to hereafter, collectively with Zimmeran and Lockridge, as "Z&L").

13.     Despite clear and unequivocal notice from prior adverse rulings by a California court in *Estrada v. FedEx Ground Package Systems, Inc.* (Case # BC 210130), multiple IRS audits, and facts asserted in Fluegel that FHD's independent contractor model was deceptive, unlawful, unsustainable, and inevitably injurious to persons induced to invest in FHD, FedEx Ground, its parent and other affiliates, and their directors, officers and participating agents ("referred to collectively herein as "FedEx") remained determined to continue business practices under FHD's independent contractor model in Illinois and various other states.

14.     The then CEO of FedEx Ground, Daniel J. Sullivan ("Sullivan"), and various other FedEx executives devised a scheme with outside counsel to continue practices deemed fraudulent, coercive and unfair by the IRS and Estrada court based largely on a plan to exploit the strategic and factual errors of Z&L and plaintiffs' counsel filing actions similar to Fluegel across the nation.

3

15.     The scheme devised by Sullivan and his cohorts further sought to exploit the clear and obvious conflicts of interest the numerous FedEx contractors included in the proposed Fluegel class had with both their counsel and each other.

16.     In furtherance of the above scheme, FedEx promptly took advantage of attempts by plaintiffs' counsel in Fluegel and across the country to disregard relevant distinctions made in Estrada and other forums in order to maximize the size of their class and potential fee awards.

17.     Z&L and other class action attorneys across the country proposed class definitions without regard to the various and materially different contracts persons included in the class actually had with FedEx, the differing pay structures articulated in such contracts, whether contractors included in the class contracted with FedEx as corporations or individuals, whether they owned one or multiple routes, and other factors plaintiffs' counsel in Fluegel would ultimately use to coerce Mr. Rocha and other plaintiffs to settle their claims for a nominal fraction of their value after certification of the class was denied.

18.     FedEx filed repeated petitions to have the various cases filed by such counsel across the states transferred to an MDL court for hearing on national, rather than the more relevant, local issues.

19.     Per FedEx's repeated petitions, the Fluegel action was transferred to the Northern District of Indiana to be heard with other such actions filed across the states (referred to hereafter as the "MDL proceedings" or the "MDL") and, ultimately, all discovery and admissible evidence in the proceeding was limited to FedEx Ground's Standard Contractor Operating Agreement, without addendums differing from contractor to contractor, and nationally promulgated rules and procedures.

20.     After Fluegel's transfer to the MDL court, Z&L filed repeated motions to certify the flawed class and disregarded express warnings of the MDL court that, if they proceeded with their chosen strategy in the MDL court, they would be precluded from later introducing evidence relevant and necessary to claims possibly held by individual, but not all, class members across the country.

21.     On May 19, 2010, Z&L was hit with a massive financial blow when the MDL court denied their second request for class certification and left them with the stale and statutorily barred (or extremely limited) claims held by the named plaintiffs bringing their class action.

22.     FedEx promptly offered plaintiffs' counsel in Fluegel the opportunity to recoup some of the millions of attorney fees lost to the extent they could produce a sufficient number of plaintiffs interested in an aggregate settlement in FedEx's favor.

23.     FedEx Executives David Rebholz, Rodger Marticke, and Clifford Johnson each conferred and agreed with FedEx's outside counsel to offer plaintiffs' counsel a commercial bribe of an amount making it a felony in the states of Illinois, Minnesota and Pennsylvania.

24.     In exchange for such bribe, the aforesaid FedEx executives sought the names of opposing counsel's undisclosed clients and proposed class members, their agreement to conceal and destroy evidence of criminal conduct, pervasive confidentiality agreements, and unauthorized release of claims held by plaintiffs' non-party principals and affiliates.

25.     In June or July of 2010, knowing Z&L had already solicited numerous contractors for its class action and had no other way to recover fees for the years of attorney time spent on class issues, FedEx offered to pay the named plaintiffs' statutorily barred claims and millions in otherwise unrecoverable fees to Z&L for time spent unsuccessfully on class issues in the MDL if

Z&L could persuade a sufficient number of other potential plaintiffs in Illinois to join an aggregate settlement constituting a small fraction of its overall liability.

26.     In May 2012, after Z&L successfully solicited more than 100 plaintiffs, FedEx affirmed its prior offer and agreed to pay Z&L an additional fee for each additional contractor successfully solicited for the aggregate settlement.

27.     FedEx made the foregoing offers with the intent and expectation that Z&L would exploit their clients' conflicting interests and the information entrusted to it by each such client to obtain the most favorable settlement for the MDL plaintiffs, FedEx, and its affiliates, insurer and other cohorts.

28.     Motivated by FedEx's offer to pay their unrecoverable fees and its agreement to keep Z&L's disparate and unfair allocation to plaintiffs named in the MDL secret, Z&L contacted Mr. Rocha and numerous other FedEx contractors solicited by them in 2005 and 2006 and had them execute retention agreements authorizing Z&L to prosecute their employee misclassification claims against FedEx.

29.     Z&L further agreed, in addition to persuading additional contractors to severely discount and settle their claims in FedEx's favor, to keep and conceal documents and evidence the court refused to protect from the plaintiffs and public via protective order and to destroy such documents and evidence upon payment of amounts promised.

30.     In formally accepting FedEx's bribe in May 2012, Z&L executed an agreement to conceal document evidence of FedEx's misconduct not subject to any protective order or confidential in any way.

31.     Z&L further agreed to destroy all documents and information obtained from FedEx after remand from the MDL court despite knowledge that such evidence was relevant and would be required by Mr. Rocha and other clients rejecting the settlement.

32.     Z&L's agreement to keep documents secret and to destroy documents and other evidence was made in violation of written retention agreements Z&L had with Mr. Rocha and other clients and without their knowledge and consent.

33.     Likewise, Z&L's receipt of approximately 50% of all settlements paid plus millions in fees beyond what was disclosed to Mr. Rocha and Z&L's other clients at the time Z&L sought court approval also violated the written retention agreements Z&L had with Mr. Rocha and its other clients.

34.     Z&L intentionally and actively concealed its receipt of millions more in fees than disclosed and the addition of numerous more plaintiffs for additional fees from Mr. Rocha and others represented by Z&L to circumvent the need for their consent.

35.     Mr. Rocha executed a retention agreement with Z&L on July 23, 2010 and, though Plaintiffs' Counsel immediately disclosed his name to FedEx, Z&L did not join Mr. Rocha as a plaintiff in Fluegel, amend the class definition in their complaint to include Mr. Rocha, or take any other action to protect Mr. Rocha's interests and/or toll the statute of limitations on his claims until joining him as a plaintiff in July, 2011.

36.     After FedEx presumably rejected the sufficiency of Z&L's first list of potential plaintiffs in 2010, Z&L spent the following year aggressively soliciting additional plaintiffs for what it falsely represented to still be a "class action" against FedEx and signed up far more plaintiffs than it could ever actually represent under the terms retained.

37.     Between July 2010 and July 2011, while Z&L obtained retention agreements from its previously undisclosed clients and recruited others for the aggregate settlement, FedEx offered its contractors $10,000 to execute releases of any and all claims against FedEx they had in connection with its non-renewal and termination of contracts.

38.     In May 2012, at mediation, FedEx formally agreed to pay the MDL plaintiffs' statutorily barred claims and Z&L's unrecoverable fees in exchange for the release of other more valuable claims held by existing contractors and non-party corporate contractors for which plaintiffs' counsel had neither actual nor apparent authority to bind.

39.     FedEx offered no benefit or consideration to non-party corporations in the deal and entered into the foregoing agreements with Z&L based solely on Z&L's purported and apparent authority to act on behalf of the individual plaintiffs.

40.     Between May 2012 and January February 2013, Z&L continued to actively and aggressively solicit additional plaintiffs for FedEx in pursuit of the additional fees promised for each contractor it persuaded to execute a general release of claims for a small fraction of its value.

41.     The offer to pay Z&L additional fees for additional plaintiffs and non-party releases was made on an expressly confidential basis, kept secret from the court (at least in material part), Mr. Rocha, and other clients of Z&L included in the first round of settlements resulting in the dismissal of the Fluegel action in September 2012.

42.     Upon information and belief, contractors solicited by Z&L for subsequent settlements with FedEx were offered substantially more than Mr. Rocha and other contractors solicited by Z&L for the first round.

## FIRST CAUSE OF ACTION:  BREACH OF CONTRACT

43.     Mr. Rocha incorporates and restates the allegations contained in paragraphs 1 through 42 as if fully stated herein as paragraph 43 of this complaint.

44.     On July 23, 2010, Carlos G. Rocha executed the Retainer Agreement attached hereto as Exhibit A sent to him by Z&L.

45.     The Retainer Agreement is valid and enforceable by Mr. Rocha, formed by offer, acceptance and consideration.

46.     The Retainer Agreement states, in paragraph 5, that Z&L will represent Mr. Rocha in a lawsuit against FedEx Ground for misclassifying its Home and Ground Delivery drivers (the "legal services") and keep Mr. Rocha informed of progress and developments.

47.     Z&L's failure to amend its class definition to include Mr. Rocha and/or to otherwise join him as a plaintiff in the Fluegel action for nearly a year after Mr. Rocha's execution of the Retainer Agreement constitutes a material breach of its agreement to perform the above legal services and its duty of good faith and fair dealing implied therein.

48.     Z&L further materially breached the foregoing duty to inform Mr. Rocha of progress and developments and its duty of good faith and fair dealing implied therein by:

> (1) concealing and refusing to disclose the specific release terms agreed to at the May 2012 mediation,
>
> (2) demanding that Mr. Rocha execute an acknowledgement form waiving any conflicts with respect to settlement allocations before being given the opportunity to review the settlement and release FedEx would expect him to sign,
>
> (3) failing to inform Mr. Rocha of the date and time plaintiffs' motion to approve the mediated settlement would be heard as requested by Mr. Rocha,
>
> (4) concealing agreements it made with FedEx with respect to the destruction and concealment of documents and other evidence required by Mr. Rocha and other plaintiffs in the event they chose not to participate in the mediated settlement,

(5) concealing millions of dollars FedEx had agreed to pay Z&L in connection with the settlement beyond the amounts disclosed in inducing his acceptance of the settlement mediated in May 2012, and

(6) refusing to provide a breakdown or further detail as to the allocation of attorney fees to him in the aggregate settlement and the manner in which his unpaid wages and settlement amount were calculated.

49.     The Retainer Agreement provides, in paragraph 10, that Z&L would not settle Mr. Rocha's claims without his approval and that Mr. Rocha would have the absolute right to accept or reject any settlement.

50.     Paragraph 10 of the Retainer Agreement further states that Z&L would notify Mr. Rocha promptly of the terms of any settlement offer received by them.

51.     Z&L further agreed in writing on June 5, 2012 that Mr. Rocha would retain the ability to make a final determination as to whether he wished to ultimately join the settlement mediated on May 2012 once the release terms of the settlement agreement had been finalized. *See* correspondence attached hereto as Exhibit B.[1]

52.     Z&L further agreed in writing in Exhibit B hereto that, once negotiation of the actual settlement agreement and release with FedEx Ground was complete, a copy of the final settlement agreement would be sent to Mr. Rocha prior to submission to the court for approval.

53.     Once this federal court advised Z&L and FedEx that it would not approve the settlement without the consent of all, 100%, of the plaintiffs, however, Z&L and FedEx conspired and agreed to withhold and conceal the final settlement agreement from Mr. Rocha and other plaintiffs until after court approval of the settlement was obtained based upon the vague and limited acknowledgment forms attached to the June 5, 2010 letters.

---

[1] Z&L also included a chart of settlement amounts paid to plaintiffs in the settlement that redacted the name of plaintiffs receiving each amount.  This chart has not been included as part of Exhibit B with the accompanying letter and acknowledgment form.

54.     Counsel for Arize 11, and current counsel for Mr. Rocha, advised Z&L almost immediately after the May 2012 mediation that any settlement that required Mr. Rocha to release Arize 11's claims for his own personal gain would constitute a breach of contractual and fiduciary duties owed by him to Arize 11's creditors and investors and that she intended to appear at any hearing on the settlement to advise the court of Arize 11's objection.

55.     Counsel for Arize 11, and current counsel for Mr. Rocha, also advised Z&L shortly thereafter that Mr. Rocha was not the only plaintiff agreeing to the May 2012 under the belief that it released only those claims arising from the facts and transactions at issue in the Fluegel action – FedEx's misclassification of employees – and not unrelated claims by their corporations related to FedEx's ISP transition currently filed and prosecuted by other counsel.

56.     Z&L's conduct alleged in paragraph 47 of this complaint, including its unilateral decision to withhold the final settlement agreement from Mr. Rocha until after court approval was obtained, constitutes a material breach of Z&L's contractual and duty of good faith and fair dealing implied in paragraph 10 of the Retainer Agreement and subsequent representations contained in the June 5, 2012 letter attached as Exhibit B hereto.

57.     Z&L's threat in September 2012 to dismiss Mr. Rocha's claims with prejudice without requested notice to him of any motion for dismissal after he refused to final settlement agreement also constitutes a material breach of paragraph 10 of the Retainer Agreement, written representations in the June 5, 2012 letter that he would retain the right to refuse participation in the settlement until after the opportunity to review the agreement drafted by the parties, and Z&L duty of good faith and fair dealing implied therein.

58.     The Retainer Agreement provides, in paragraph 12, that Z&L could withdraw from its representation of Mr. Rocha with Mr. Rocha's consent.

59.     Z&L's refusal of Mr. Rocha's demand that they reinstate his claims dismissed without prejudice in May 2012 and otherwise comply with its agreement to provide legal services after Mr. Rocha's refusal of the final settlement agreement constitutes a material breach of paragraph 12 of the Retainer Agreement and Z&L's duty of good faith and fair dealing implied therein.

60.     Z&L's disclosure of attorney-client information to FedEx and conduct designed to undermine Mr. Rocha's claims, forcing Mr. Rocha to ultimately agree not to object to – though he never consented to – Z&L's expressed desire and subsequent motion to withdraw, also constitutes a material breach of paragraph 12 of the Retainer Agreement and Z&L's duty of good faith and fair dealing implied therein.

61.     The Retainer Agreement provides, in paragraph 12 that, upon termination of Z&L's representation, Z&L shall take steps to the extent reasonably practicable to protect Mr. Rocha's interests, give him reasonable notice, allow him time to employ other counsel, and surrender papers and property to which he was entitled.

62.     Z&L breached the foregoing provisions of paragraph 12 of the Retainer Agreement by:

> (1) taking no steps whatsoever to reinstate Mr. Rocha's claims and otherwise protect his interests,
>
> (2) filing a motion to withdraw that misrepresented the circumstances under which it was withdrawing and Mr. Rocha's reasons for refusing to execute the modified and expanded settlement documents sent to him after court approval,
>
> (3) giving Mr. Rocha no notice whatsoever of the representations it intended to make in its motion to withdraw before filing that motion,
>
> (4) giving Mr. Rocha no notice whatsoever or opportunity to appear on that motion and object to the misrepresentations of fact contained therein,
>
> (5) giving Mr. Rocha no time whatsoever to employ other counsel to represent him in the Fluegel matter, and

(6) destroying rather than surrendering papers and property to which he was entitled.

63.     At no point prior to Z&L's outrageous conduct in unilaterally substituting Atty. Johnson as Mr. Rocha's counsel in the Fluegel matter, without Mr. Rocha's or her consent or advance notice to them, did Atty. Johnson ever agree to assume responsibility for legal services Z&L had agreed but refused to provide Mr. Rocha under the Retainer Agreement.

64.     Atty. Johnson filed her appearance on behalf of Mr. Rocha as an attorney to be noticed after Z&L denied Mr. Rocha's request that he be given notice of any motion to dismiss his claims filed by it and/or FedEx and Z&L stated that it had no duty to provide Mr. Rocha notice of anything and intended to dismiss his claims without any such notice.

65.     Both FedEx and Z&L were put on notice of Mr. Rocha's objection to Z&L's stated intent and neither advised the court of such circumstances causing Atty. Johnson's appearance as counsel to be notice in Fluegel. *See* September 7, 2012 letter sent to both FedEx and Z&L attached hereto as Exhibit C.

66.     Atty. Johnson agreed to intervene on Mr. Rocha's behalf as counsel retained to address Z&L's attempt to bribe and extort a release of Arize 11's claims from him, not to sue FedEx, and to appear on Z&L's and FedEx's joint motion to dismiss to advise the court of their collusion and the misconduct with respect to non-party claims before jurisdiction was relinquished.

67.     At all relevant times prior to Z&L's fraud upon the court in suggesting that Mr. Rocha and/or Atty. Johnson sought a substitution of counsel rather than Z&L's restatement of his claims, Z&L was made aware of the fact that Atty. Johnson represented Arize 11 and intended to sue on Mr. Rocha's behalf if Z&L failed to negotiate a final settlement agreement that did not require him to breach his fiduciary duties to Arize 11, its creditors and investors.

68.     Paragraph 13 of the Retainer Agreement provides, in paragraph 13, that Z&L would promptly release to Mr. Rocha on request all things defined as his papers and property therein at the termination of its representation.

69.     Mr. Rocha requested all such papers and property but was provided with only a handful of the documents and evidence to which he was entitled.

70.     Z&L's withholding and destruction of evidence, as well as documents supporting its allocation of settlement amounts and fees in the final settlement agreement, constitutes a material breach of both Z&L's duty to protect Mr. Rocha's interests in withdrawing under paragraph 12, contractual duties under paragraph 13, and their duties of good faith and fair dealing implied therein.

71.     The Retainer Agreement provides, in paragraph 6, that any final fee paid to Z&L would be subject to petition by counsel and approval by the court.

72.     The Retainer Agreement further provides, in paragraph 8, that payment of any attorney fees to Z&L and any of its associated co-counsel will be subject to determination by the Court.

73.     Upon information and belief, Z&L did not include the final and total fee included in the settlement agreement and release demanded from Mr. Rocha and other plaintiffs in August/September 2014 (totaling more than half settlement amounts offered to individual plaintiffs plus all fees separately awarded by the court).

74.     Upon information and belief, Z&L's petition for settlement approval included only those fees disclosed to Mr. Rocha and other plaintiffs in May and June of 2012 but not the millions more actually paid to Z&L disclosed to Mr. Rocha and other plaintiffs only after the court approved the settlement agreement in or around August/September of 2012.

75.     Z&L's failure to file a petition for approval of the entire and final fee offered and paid to it under the settlement and release documents demanded from Mr. Rocha in August/September 2012 and to obtain court approval of the same constitutes a material breach of terms of the Retainer Agreement requiring the same.

76.     Z&L's filing its petition for approval of the settlement *in camera*, under seal, and failure to disclose the order entered by the court at that time to Mr. Rocha and possibly other plaintiffs constitutes a material breach of the Retainer Agreement and Z&L's duty of good faith and fair dealing thereunder.

77.     Z&L and FedEx conspired and agreed to file their motion *in camera* and seek approval of fees by a petition filed under seal in order to defraud Mr. Rocha and other plaintiffs.

78.     Z&L and FedEx further conspired and agreed to conceal from Mr. Rocha and other plaintiffs the actual fee approved by this federal court in order to avoid objection to such fee and this court's review of the grossly excessive and unreasonable fee total included in the settlement and release for Z&L as part of a commercial bribe first offered to Z&L in mid-2010 and formally accepted by Z&L in May 2012.

79.     Z&L and FedEx further included pervasive confidentiality agreements preventing plaintiffs executing the settlement and release from disclosing to anyone the amount of fees actually paid to Z&L and other material facts related to Z&L's breach of its Retainer Agreements and fiduciary duties to Mr. Rocha and other plaintiffs for the purpose of obstructing justice and precluding witnesses to its misconduct.

80.     The Retainer Agreement provides, in paragraph 6, that Mr. Rocha shall owe no fee to Z&L if no recovery is obtained for him by Z&L.

81.     After refusing to reduce its unreasonable and excessive fee disclosed in August/September by any amount exceeding $5,000, and Mr. Rocha thereafter refused the settlement agreement which would have precluded any subsequent suit against Z&L for its misconduct, Z&L further agreed in writing that it would not recover any fees from Mr. Rocha if Mr. Rocha agreed not to object to its motion to withdraw as counsel. *See* attached correspondence attached hereto as Exhibit D.

82.     Yet, upon information and belief, FedEx paid and Z&L accepted all amounts previously promised in the settlement agreement, even those amounts purportedly paid for and attributable to Mr. Rocha and his claims.

83.     Z&L's acceptance of fees for work it purportedly did on behalf of Mr. Rocha, without his consent and after indicating that it would recover no such fees, also constitutes a breach of the Retainer Agreement and Z&L's duty of good faith and fair dealing implied therein.

84.     Mr. Rocha suffered significant damages as a result of Z&L's foregoing breaches of the Retainer agreement and files this action for damages and enforcement of Z&L's duties upon termination of its representation thereunder, including but not limited to the surrender of all papers and property to which Mr. Rocha is entitled and requires for the prosecution of his claims against FedEx.

85.     Mr. Rocha is further entitled to the award of reasonable attorney fees and costs incurred in the enforcement of this action under the Retainer Agreement.

## SECOND CAUSE OF ACTION: BREACH OF FIDUCIARY DUTIES

86.     Mr. Rocha incorporates and restates the allegations contained in paragraphs 1 through 85 as if fully stated herein as paragraph 86 of this complaint.

87.     As Mr. Rocha's attorneys, Z&L owed Mr. Rocha fiduciary duties of loyalty and care.

88.     Z&L breached such duties by the facts alleged in paragraphs 1 through 84 of this complaint and by:

(1) colluding with FedEx to defraud Mr. Rocha and other plaintiffs;

(2) acceptance of a commercial bribe from FedEx in the form of otherwise unrecoverable attorney fees and costs incurred in its unsuccessful attempt to certify a class in MDL proceedings;

(3) its extortion of, and attempt to extort, an expanded release of claims and confidentiality agreements from Mr. Rocha and other plaintiffs having a proprietary interest in the settlement negotiated and agreed to on May 2012 for the release of claims actually asserted in Fluegel;

(4) its failure to evaluate Mr. Rocha's individual claims and to advise him with respect to those claims prior to joining him in the Fluegel action and/or its belated opinion offered in June 26, 2012; and

(5) providing the bad faith opinion with respect to Mr. Rocha's claims in the June 26, 2012 letter attached as Exhibit E hereto and using that opinion to subsequently induce Mr. Rocha's execution of the acknowledgement form he previously refused to sign based on FedEx's other asserted defenses upon receipt of the June 5, 2012 letter attached hereto as Exhibit B.

89.     Mr. Rocha suffered significant damages as a result of Z&L's foregoing breaches of its fiduciary duties and is entitled to compensatory damages, attorney fees, punitive damages, disgorgement of profits, specific performance and other relief deemed necessary and appropriate by this court.

### THIRD CAUSE OF ACTION:  FRAUD

90.     Mr. Rocha incorporates and restates the allegations contained in paragraphs 1 through 89 as if fully stated herein as paragraph 90 of this complaint.

91.     Z&L made the following misrepresentations and omissions of material fact detrimentally relied upon by Mr. Rocha:

(1) Z&L omitted information regarding FedEx's promise to pay Z&L's unrecoverable fees in exchange for releases from a sufficient number of contractors at the time Z&L contacted Mr. Rocha in July 2010 and again in July 2011 regarding becoming an individual named plaintiff in Fluegel;

(2) Z&L failed to disclose amounts it would be paid under the final settlement agreement prior to Mr. Rocha's execution of the acknowledgment form and the court's approval of the settlement;

(3) Z&L misrepresented the basis for its allocation of settlement amounts and fees in the mediated settlement;

(4) Z&L has misrepresented and concealed the terms of the settlement mediated in May 2012, which, upon information and belief, required only the release of claims asserted in Fluegel and/or arising from the same transactions and occurrences; and

(5) Z&L concealed the terms of the documents presented to the court for approval and the order entered by the court in approving the settlement.

92.    Mr. Rocha's reliance upon the foregoing representations was reasonable and resulted in substantial harm to Mr. Rocha.

93.    Mr. Rocha is therefore entitled to compensatory damages, attorney fees, punitive damages, disgorgement of profits, specific performance and other relief deemed necessary and appropriate by this court.

## FOURTH CAUSE OF ACTION: VIOLATION OF CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/10a(a) and 815 ILCS 505/2)

94.    Mr. Rocha incorporates and restates the allegations contained in paragraphs 1 through 93 as if fully stated herein as paragraph 94 of this complaint.

95.    Shortly after filing the Fluegel action, Z&L sent representatives into the back doors of FHD's old Chicago terminal to unlawfully and indiscriminately solicit as many Illinois contractors as possible for its class action and obtained the contact information of Mr. Rocha and numerous other contractors joined as individual plaintiffs in Fluegel more than 5 to 6 years later through such means.

96.     After giving Z&L his contact information in 2005/2006, Mr. Rocha was thereafter induced to believe Z&L was representing and protecting his interests against FedEx and received regular updates from Z&L on the class action, only to find out that Z&L had not even included him and numerous other contractors solicited at the start of the case in its class definition.

97.     Further, when FedEx argued that claims held by Mr. Rocha and other such contractors were barred by the statute of limitation due to Z&L's failure to include them in the class and/or join them earlier, Z&L concealed that fact from Mr. Rocha and other plaintiffs agreeing to its recommended strategy for mediation in May 2012.

98.     In May 2012, after Mr. Rocha authorized and accepted a mediated settlement of causes of action asserted in Fluegel, he and the other plaintiffs consenting to the settlement of claims in Fluegel were subsequently told that they would not receive any such settlement unless they also released entirely unrelated claims arising from FedEx's post-Fluegel restructuring.

99.     Counsel for Arize 11, Atty. Lisa Johnson, advised Plaintiffs' Counsel that Mr. Rocha did not have the authority to execute any such release on behalf of Arize 11 – as such would be a breach of his fiduciary duties to existing investors and creditors, and that Arize 11 would only consent to Mr. Rocha's participation in the settlement if the release was limited to claims arising from the same operative facts or factual predicate as the claims asserted in Fluegel.

100.     Motivated by FedEx's promise to pay agreed fees, Z&L continued its effort to obtain a general release of Arize 11's claims from Mr. Rocha under threat of no settlement at all and FedEx ultimately refused to pay him or disclose the settlement terms mediated in May to him due to his refusal to release Arize 11's claims without Arize 11's independent consent.

101.     Z&L later – after Mr. Rocha discovered the conflict with Z&L created by its failure to timely assert his claims – demanded that Mr. Rocha and other such contractors execute vague acknowledgement forms that seemingly required them to pay millions in potential fees to Z&L if they challenged the settlement amount mediated for them for any reason as a condition to participating in the settlement.

102.     Though the settlement referred to in the acknowledgement form was properly limited to individual claims held by Mr. Rocha against FedEx Ground, as opposed to the settlement and release including non-party corporate claims Z&L and FedEx subsequently attempted to extort from Mr. Rocha and other Fluegel plaintiffs, Mr. Rocha refused to execute the acknowledgement form upon initial receipt on the basis that it was ambiguous and might be used by Z&L as a defense to its legal malpractice.

103.     Z&L thereafter colluded with FedEx to undermine Mr. Rocha's claims and to deny him the ability to mitigate his damages in negotiating, whether on behalf of himself or on behalf of Arize 11, a release of only those claims arising from FedEx's misclassification of drivers and arising from the same facts and transactions alleged in Fluegel (i.e. in exchange for a dismissal of the action as Mr. Rocha believes was actually negotiated at the mediation held in May 2012).

104.     Z&L's conduct constitutes a fraudulent, unfair and deceptive practice under Illinois law.

105.     Mr. Rocha is therefore entitled to statutory damages, compensatory damages, punitive damages, disgorgement of profits, specific performance and all other such relief deemed necessary and proper by the court.

## FIFTH CAUSE OF ACTION: LEGAL MALPRACTICE

106.    Mr. Rocha incorporates and restates the allegations contained in paragraphs 1 through 105 as if fully stated herein as paragraph 106 of this complaint.

107.    Z&L's conduct alleged herein constitutes legal malpractices in both Illinois and Minnesota.

108.    Mr. Rocha is therefore entitled to statutory damages, compensatory damages, punitive damages, disgorgement of profits, specific performance and all other such relief deemed necessary and proper by the court.

## REQUEST FOR JUDGMENT AND RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiff requests that judgment be entered against Defendants and in his favor with an order:

   a.   awarding the total and cumulative value of compensatory damages suffered by Plaintiff;

   b.   awarding statutory and all other damages allowed under the Illinois Consumer Fraud and Deceptive Practices Acts;

   c.   awarding disgorged unearned fees and other profit gained by defendants;

   d.   awarding of punitive damages in an amount to be proven at trial;

   e.   awarding attorney fees, witness fees and costs as provided by law;

   f.   requiring specific performance of defendants' obligations to Plaintiff upon termination of their representation under the Retainer Agreement; and

   g.   awarding such other further relief as the Court may deem just and equitable.

Date: June 27, 2014                    CARLOS G. ROCHA

                                       /s/ Lisa D. Johnson
                                       Lisa D. Johnson, Esq. (ARDC #6280293)
                                       Anchor Law Offices, PLLC
                                       1600 Wedgewood Drive, Apt. 208
                                       Gurnee, IL 60031
                                       Phone: 847-409-5066
                                       Email: ljohnson@anchorattorneys.com